No. 14-2012

━━━━━━━━━━━━━━━━━━━━

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

━━━━━━━━━━━━━━━━━━━━

COASTAL COAL-WEST VIRGINIA, LLC,

*Petitioner,*

v.

RICHARD L. MILLER, and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

━━━━━━━━━━━━━━━━━━━━

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

━━━━━━━━━━━━━━━━━━━━

**OPENING BRIEF OF PETITIONER,
COASTAL COAL-WEST VIRGINIA, LLC
PUBLIC REDACTED VERSION**

━━━━━━━━━━━━━━━━━━━━

Jeffrey R. Soukup
Jackson Kelly PLLC
175 E. Main St., Ste. 500
Lexington, KY  40507
(304) 284-4100
jrsoukup@jacksonkelly.com
*Counsel for Coastal Coal-West
Virginia, LLC*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 14-2012       Caption: Coastal Coal-West Virginia, LLC v. Richard L. Miller

Pursuant to FRAP 26.1 and Local Rule 26.1,

Coastal Coal-West Virginia, LLC, who is Petitioner, makes the following
disclosure:

1.     Is party/amicus a publicly held corporation or other publicly held entity?
         ____ YES    _X_ NO

2.     Does party/amicus have any parent corporations?   _X_ YES     ____ NO

         Coastal Coal-West Virginia, LLC changed its name to Brooks Run
         Mining Company, LLC, a Delaware LLC in good standing, on March
         7, 2003.  Brooks Run Mining Company, LLC is a wholly owned
         subsidiary of Alpha Natural Resources, Inc.

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held
       corporation or other publicly held entity?   _X_ YES ____ NO

         Brooks Run Mining Company, LLC is a wholly owned subsidiary of
         Alpha Natural Resources, Inc.  Alpha Natural Resources, Inc. (ANR)
         is a publically traded corporation on the New York Stock Exchange.

4.     Is there any other publicly held corporation or other publicly held entity that
       has a direct financial interest in the outcome of the litigation (Local Rule
       26.1(b))?
         _____YES   _X_ NO

5.     Is party a trade association?
         _____YES   _X_ NO

6.     Does this case arise out of a bankruptcy proceeding?
         _____YES   _X_ NO

/s/ Jeffrey R. Soukup_____               November 19, 2014
*Counsel for Coastal Coal-West Virginia, LLC*

# TABLE OF CONTENTS

I.     STATEMENT OF SUBJECT MATTER .................................................1

II.    STATEMENT OF THE ISSUES .................................................................2

        1.    Did the ALJ fail to substantively consider the x-ray readers' comments in violation of the BLBA's directive that all relevant evidence of pneumoconiosis shall be considered?...................................2

        2.    Did the ALJ fail to consider the biopsy, CT-scan, and PET-scan evidence against the x-ray evidence in violation of the BLBA's directive that all relevant evidence of pneumoconiosis shall be considered?...................................2

        3.    Did the ALJ erroneously apply the holding of *Westmoreland Coal Co. v. Cox* in finding complicated pneumoconiosis established?............................2

        4.    Did the ALJ err in crediting the medical opinions of Drs. Jaworski and Gaziano and in discrediting the medical opinions of Drs. Maxwell and Basheda? ...................................2

III.    STATEMENT OF THE CASE .................................................................3

    A.    Procedural History .......................................................... 3

    B.    Relevant Facts ................................................................ 6

IV.    SUMMARY OF ARGUMENT .................................................................11

VI.    ARGUMENT .................................................................14

    A.    Standard of Review....................................................... 14

    B.    Discussion of Issues..................................................... 15

        1.    The finding that the x-ray evidence establishes complicated pneumoconiosis must be vacated because the ALJ failed to consider the x-ray readers' comments, in violation of the BLBA's

directive that all relevant evidence shall be considered.............................................................15

2.    The ALJ failed to weigh the biopsy, CT-scan, and PET-scan evidence against the x-ray evidence. The ALJ thus failed to weigh all relevant evidence and to consider whether the biopsy, CT-scan, and PET-scan evidence suggest pneumoconiosis is less likely...................................................................24

3.    The ALJ erroneously applied *Westmoreland Coal Co. v. Cox* in finding complicated pneumoconiosis established. ............................................................28

4.    The ALJ erred in crediting the medical opinions of Drs. Jaworski and Gaziano and in discrediting the medical opinions of Drs. Maxwell and Basheda.....................32

VII.   **CONCLUSION** .........................................................41

VIII.  **REQUEST FOR ORAL ARGUMENT** ...................................42

IX.    **ADDENDUM OF STATUTES, RULES, and REGULATIONS**........................................................43

X.     **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**....................52

XI.    **CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Consol. Edison Co. of N.Y. v. NLRB*,
    305 U.S. 197 (1938)......................................................................14

*Cranor v. Peabody Coal Co.*,
    22 Black Lung Rep. (Juris.) 1–1, 1–5 (Ben. Rev. Bd. 1999).............*passim*

*Dehue Coal Co. v. Ballard*,
65 F.3d 1189 (4th Cir. 1995)..............................................................14

*Director, OWCP v. Greenwich Collieries*,
    512 U.S. 267 (1994) .........................................................15, 38

*Dixie Fuel Co. v. Director, OWCP*,
    700 F.3d 878 (6th Cir. 2012) .............................................22, 25

*Eastern Assoc. Coal Corp. v. Director, OWCP [Scarbro]*,
    220 F.3d 250 (4th Cir. 2000) .............................................29, 31

*Elm Grove Coal Co. v. Director, OWCP*,
    480 F.3d 278 (4th Cir. 2007)..............................................22, 25

*Herndon v. CK Coal Corp.*,
    BRB No. 09-0419 BLA (Feb. 22, 2010) (unpub.) ......................................26

*Island Creek Coal Co. v. Compton*,
    211 F.3d 203 (4th Cir. 2000)...............................................*passim*

*Melnick v. Consolidation Coal Co.*,
    16 Black Lung Rep. (Juris.) 1-31 (Ben. Rev. Bd. 1991) (*en banc*) .......*passim*

*Milburn Colliery Co. v. Hicks*,
    138 F.3d 524 (4th Cir. 1998)........................................... 14, 34, 39

## TABLE OF AUTHORITIES, Continued

*Penn Allegheny Coal Co. v. Williams*,
   114 F.3d 22 (3d Cir. 1997) ................................................................25, 27

*Sterling Smokeless Coal Co. v. Akers*,
   131 F.3d 438 (4th Cir. 1997)..........................................................14

*Thornberry v. Island Creek Coal Co.*,
   BRB No. 11-0350 BLA (Feb. 28, 2012) (unpub.) .......................................26

*Toler v. Eastern Assoc. Coal Co.*,
   43 F.3d 109 (4th Cir. 1995)..........................................................38

*Walker v. Director, OWCP*,
   927 F.2d 181 (4th Cir. 1991)................................................34, 39

*Westmoreland Coal Co. v. Cox*,
   602 F.3d 276 (4th Cir. 2010)............................................... *passim*

## <u>Statutes</u>

Black Lung Benefits Act
   33 U.S.C. § 921 .......................................................................16
   30 U.S.C. § 923 .......................................................... 11, 12, 22
   30 U.S.C. § 932 .......................................................................1, 44

Longshore and Harbor Workers' Compensation Act
   33 U.S.C. § 921 .......................................................................1

## <u>Regulations</u>

Part 718: Standards for Determining Coal Miner's Total Disability or Death Due to
Pneumoconiosis
   20 C.F.R. § 718.104.................................................. 30, 31, 32, 33
   20 C.F.R. § 718.201.................................................................49
   20 C.F.R. § 718.202...........................................................*passim*
   20 C.F.R. § 718.303...........................................................*passim*
   20 C.F.R. § 718.304...........................................................*passim*

## TABLE OF AUTHORITIES, Continued

Part 725:  Claims for Benefits Under Part C of Title IV of the Federal Coal Mine
Safety and Health Act, as Amended
      20 C.F.R. § 725.2 (2013) ..............................................................................3
      20 C.F.R. § 725.482(a) (2013) ......................................................................1

Part 802: Rules of Practice and Procedures
      20 C.F.R. § 802..............................................................................................1

## I.  STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This matter involves an appeal from a final order of the United States Department of Labor Benefits Review Board ("Board").  This Court has jurisdiction over an appeal from a final order of the Board under Section 21(c) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 921(c), as incorporated by § 422(a) of the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 932(a).  The Board affirmed the January 9, 2013 award of federal black lung benefits to Richard L. Miller by United States Department of Labor ("DOL") Administrative Law Judge ("ALJ") Michael P. Lesniak.  Joint Appendix ("JA") 56.

The jurisdictional time limit for filing an appeal from a final order of the Board is 60 days.  *See* 33 U.S.C. § 921(c); 20 C.F.R. § 725.482(a) (2013).  The Board issued its final order affirming the award of benefits to Mr. Miller on December 23, 2013.  JA 56.  Coastal Coal-West Virginia, LLC timely filed a motion for *en banc* reconsideration with the Board on January 23, 2014.  *See* 20 C.F.R. § 802.407.  The Board denied Coastal Coal's motion for *en banc* reconsideration on July 28, 2014.  JA 68.  Coastal Coal filed its appeal with this Court on September 25, 2014.  JA 71.  The injury alleged, within the meaning of Section 21(c) of the LHWCA, occurred in West Virginia.  This Court has jurisdiction to review the Board's decision.

## II.    STATEMENT OF THE ISSUES

1.    **Did the ALJ fail to substantively consider the x-ray readers' comments in violation of the BLBA's directive that all relevant evidence of pneumoconiosis shall be considered?**

2.    **Did the ALJ fail to consider the biopsy, CT-scan, and PET-scan evidence against the x-ray evidence in violation of the BLBA's directive that all relevant evidence of pneumoconiosis shall be considered?**

3.    **Did the ALJ erroneously apply the holding of *Westmoreland Coal Co. v. Cox* in finding complicated pneumoconiosis established?**

4.    **Did the ALJ err in crediting the medical opinions of Drs. Jaworski and Gaziano and in discrediting the medical opinions of Drs. Maxwell and Basheda?**

### III.    STATEMENT OF THE CASE

**A.    Procedural History**

The case concerns a claim for federal black lung benefits filed by Richard L. Miller on August 4, 2010.[1]  JA 1.  The District Director awarded benefits on April 14, 2011, and forwarded the claim to the Office of Administrative Law Judges ("OALJ") for a formal hearing at Coastal Coal's request.  JA 37.

ALJ Michael P. Lesniak awarded benefits on January 9, 2013.  JA 36. ALJ Lesniak found the analog x-ray evidence positive for both simple and complicated coal workers' pneumoconiosis.  *Id.* at 49.  The ALJ also found that the biopsy results "clearly do not support a finding of complicated pneumoconiosis," *id.* at 49–50, and that the CT scan evidence fails to establish the presence of complicated pneumoconiosis, *id.* at 51.  The ALJ gave "limited" weight to Dr. Andrzej J. Jaworski's medical opinion, "some" weight to Dr. Dominic Gaziano's medical opinion, and "little" weight to Drs. Stephen G. Basheda and Maxwell's medical opinions.  *Id.* at 51–53.   Based on these residual findings, complicated pneumoconiosis was found.  *Id.* at 54.

Coastal Coal appealed to the Benefits Review Board, and a majority affirmed on December 23, 2013.  JA 56.  The majority affirmed the ALJ's finding the x-ray evidence established complicated pneumoconiosis (*id.* at 62), that the

---

[1]     Because this claim was filed after January 19, 2001, it is governed by 20 C.F.R. Parts 718 and 725.  *See* 20 C.F.R. §§ 718.2, 725.2 (2013).

3

ALJ considered the x-ray readers' comments at 20 C.F.R. § 718.202(a)(1) in weighing the x-ray evidence (*id.*), and that the ALJ properly found these comments did not detract from the physicians' identification of large pneumoconiotic opacities on x-ray, as the comments only addressed the opacities' cause and not their existence (*id.* at 63 (citing *Melnick v. Consolidation Coal Co.* 16 Black Lung Rep. (Juris.) 1-31, 1–33–34 (Ben. Rev. Bd. 1991) (*en banc*); *Cranor v. Peabody Coal Co.*, 22 Black Lung Rep. (Juris.) 1–1, 1–5 (Ben. Rev. Bd. 1999))). The majority also held the ALJ properly assessed the evidence's credibility in light of *Westmoreland Coal Co. v. Cox*, 602 F.3d 276 (4th Cir. 2010), and properly explained the bases for his credibility determinations in accordance with the Administrative Procedure Act ("APA") (*id.* at 63–64). The majority affirmed the finding that Coastal Coal offered no contrary evidence to rebut the § 718.203(b) presumption that pneumoconiosis arose out of coal mine employment (*id.* at 64).

Administrative Appeals Judge Boggs dissented, explaining remand was proper in light of the x-ray readers' comments, "as the comments bring into question whether the disease process seen on x-rays is reflective of complicated pneumoconiosis or of another disease process." *Id.* at 65 (Boggs, J., dissenting). The ALJ erred in finding the x-ray evidence established complicated pneumoconiosis, as he failed to consider the readers' comments under § 718.202(a)(1). *See id.* at 66. Under the precedent of *Melnick* and *Cranor*,

4

explained Judge Boggs, comments which relate to whether the disease diagnosed is

pneumoconiosis or whether the pneumoconiosis diagnosis is equivocal must be

considered under § 718.202. *See id.* Conversely, comments which do not

undermine the credibility of the pneumoconiosis diagnosis, but instead relate to the

pneumoconiosis's source, are considered under § 718.203. *See id.* The comments

here fell into the former, diagnosis of pneumoconiosis, category. *See id.*

Judge Boggs explained the ALJ compounded his error by refusing to

consider the x-ray readers' comments at the only other regulation they could be

considered under, § 718.203(b):

> In this case, citing *Cranor*, the administrative law judge did not
> consider the comments on the x-rays in Sections 718.202(a)(1) and
> 718.304(a). Then, in addressing 20 C.F.R. § 718.203, he found
> "[e]mployer has failed to offer any contrary evidence rebutting the
> presumption; therefore, the presumption stands." Furthermore, in a
> footnote, he stated "[t]o the extent that the x-ray comments are
> properly considered at this juncture, suggestions that [claimant's]
> x-rays showed lung cancer or an old granulomatous disease do not
> constitute contrary evidence, as these disease processes would not
> cause pneumoconiosis."

*Id.* (internal citations omitted). The ALJ's observation "was on the mark and

underscores exactly why consideration of the comments is required at

20 C.F.R. §§ 718.202(a)(1) and 718.304(a)." *Id.* at n.15. "The effect of the

administrative law judge's decision is that he did not consider the comments

substantively at any point." *Id.* Because the ALJ used his x-ray findings to

5

determine whether the medical opinions were credible, the ALJ's error in failing to consider the x-ray readers' comments permeated the rest of his opinion. *Id*. at 67.

Judge Boggs found the ALJ also erred in: (1) failing to consider the comments from the needle biopsy report that "clinical exclusion of pneumoconiosis could be warranted"; and (2) failing to consider whether the CT-scan and PET-scan results suggest pneumoconiosis was less likely. *Id.* While the ALJ considered each § 718.304 category of evidence from the perspective of whether that particular category established complicated pneumoconiosis, the ALJ did not consider whether the medical evidence that did not establish complicated pneumoconiosis also undercut the credibility of the evidence to the contrary (and vice versa). *Id.*; *see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 211 (4th Cir. 2000).

Coastal Coal moved for *en banc* reconsideration, which the Board denied on July 28, 2014. JA 68. Coastal Coal timely appealed the Board's decision to this Court on September 25, 2014. *Id.* at 71.

**B.    Relevant Facts**

Richard L. Miller had approximately 29 years of coal mine employment. *Id.* at 18. He last worked for Coastal Coal as a roof bolter and shuttle car operator for approximately five years, ending in 1999. He retired after suffering from a heart attack. *Id.* at 14, 24–25.

6

Mr. Miller smoked one package of cigarettes per day for 30 to 35 years, last smoking in 1997. *Id.* at 23. He has significant heart problems. In 1996, he had a left heart catheterization and a coronary angiography. *Id.* at 26. In 1999, he had a heart attack and a quintuple heart bypass operation. *Id.* at 14, 20, 25. He had another left heart catheterization in 2003, as well as a third graft. *Id.* at 26–27. He had angioplasties in 2005 and 2006. *Id.* at 27. He had a pacemaker implanted in 2007. *Id.* He has artery blockages in his legs and high blood pressure. *Id.* at 21.



*See* JA 80–111.

*Id.* at 261.



*Id.* at 272–73.

*Id.* at 275.

*See id.* at 273–74.

*Id.*

*See id.*

*Id.* at 277–78.

*Id.* at 277.

*Id.* at 278.

*Id.*

*Id.* at 279.



*See id.*

*Id.* at 228, 291, 350.

*See id.* at 320.

*Id.* at 243.

*Id.* at 243, 346.

*Id.* at 346.

*Id.* at 243.

9



*Id.* at 322.

*Id.* at 322–23.

*Id.* at 244.

*Id.*

*Id.*

*Id.*

*Id.* at 112.

*Id.* at 115.

*Id.*

*Id.*

*Id.* at 283.

10

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████  *Id.* at 287.

## IV.   SUMMARY OF ARGUMENT

In determining whether a claimant for black lung benefits actually has coal workers' pneumoconiosis, the BLBA commands that all relevant evidence shall be considered.  30 U.S.C. § 923(b).   All relevant evidence includes explanatory comments physicians include on chest x-ray interpretations.  Explanatory comments are particularly relevant as (1) comments can reveal that a diagnosis of radiographic pneumoconiosis is equivocal or speculative, diminishing the persuasiveness and evidentiary weight, and (2) comments can raise questions about causation of large opacities, meaning changes consistent with pneumoconiosis are not necessarily *coal workers'* pneumoconiosis.  Benefits Review Board precedent clarifies that x-ray comments falling into the first category must be considered under 20 C.F.R. § 718.202 as evidence about the presence or absence of pneumoconiosis, while comments falling into the second category must be considered under 20 C.F.R. § 718.203 as evidence about the source or cause of the diagnosed pneumoconiosis.

Despite the clear line of precedent and the statute's imperative that all relevant evidence shall be considered, the agency fact-finder resolved that the

11

x-ray comments need not be considered at all.  The evidence here includes comments from the physicians that revealed the uncertainty or equivocality of a diagnosis consistent with complicated coal workers' pneumoconiosis, meaning they should have been considered under 20 C.F.R. § 718.202 as evidence relating to the presence or absence of pneumoconiosis.  The agency fact-finder not only errantly refused to consider the comments under the existence of pneumoconiosis regulation, 20 C.F.R. § 718.202, but compounded the error by also refusing to consider the comments under 20 C.F.R. § 718.203, as evidence of the causation of the pneumoconiosis diagnosed.  As a result, the highly relevant x-ray comments were not considered at all in deciding whether Mr. Miller has coal workers' pneumoconiosis.  The agency fact-finder violated the statute's directive that all relevant evidence shall be considered.  30 U.S.C. § 923(b).  On review, the agency review board fractured, with a majority opting to affirm the fact-finder's decision and another appeals judge dissenting, explaining the decision was inconsistent with law.

The agency has also erroneously applied this Court's precedent of *Westmoreland Coal Co. v. Cox* to find complicated coal workers' pneumoconiosis. *Cox* holds that where x-ray evidence "vividly displays opacities exceeding one centimeter," *id.* at 283, an employer must produce affirmative evidence casting doubt on the opacities' existence or etiology.  In this case, unlike the employer in

12

*Cox*, Coastal Coal proffered such affirmative evidence. Finally, the fact-finder's reasons for discrediting the opinion of treating physician, Dr. Maxwell, and the affirmative medical review by Dr. Basheda, but crediting the medical opinions of Drs. Jaworski and Gaziano are irrational, unsupported by substantial evidence in this agency record, and contrary to law.

For these reasons, the award of black lung benefits should be vacated. Whether Mr. Miller has complicated coal workers' pneumoconiosis must be reconsidered by the agency fact-finder by an analysis that complies with the BLBA.

## VI.    ARGUMENT

### A.    Standard of Review

In reviewing claims for benefits under the BLBA, this Court determines whether substantial evidence supports the findings of fact issued by the ALJ. *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998).  In determining whether substantial evidence supports the ALJ's factual determinations, the Court should address whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained the rationale used in crediting certain evidence.  *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).

The ALJ's and Board's conclusions of law are reviewed *de novo* to determine if they are rational and consistent with the law.  *See Ballard*, 65 F.3d at 1193; *see also Compton*, 211 F.3d at 207–08.

14

B.    **Discussion of Issues**

After reviewing the evidence, the ALJ found: (1) the x-ray evidence was positive for simple and complicated coal workers' pneumoconiosis; (2) the biopsy evidence did not support finding complicated pneumoconiosis; (3) the CT-scan evidence was inconclusive and failed to establish complicated pneumoconiosis; and (4) the medical-opinion evidence supports finding complicated pneumoconiosis. JA at 48–53. The ALJ then determined Mr. Miller established he has complicated pneumoconiosis and is irrebuttably presumed totally disabled due to pneumoconiosis. *Id.* at 53. The Court should reject this conclusion and remand for meaningful resolution of the conflicting evidence.

1.    **The finding that the x-ray evidence establishes complicated pneumoconiosis must be vacated because the ALJ failed to consider the x-ray readers' comments, in violation of the BLBA's directive that all relevant evidence shall be considered.**

a.    **The x-ray readers' comments concerned whether Mr. Miller has pneumoconiosis and whether the pneumoconiosis diagnoses were equivocal. They needed to be considered under 20 C.F.R. §§ 718.202(a)(1) and 718.304(a).**

The dispositive issue is whether Mr. Miller put forth sufficient evidence to establish complicated coal workers' pneumoconiosis. Since the 15-year presumption does not apply, Mr. Miller has the burden of proof. *See Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 280–81 (1994). The evidence overwhelmingly indicates Mr. Miller does not have a totally disabling respiratory

15

or pulmonary impairment.  Mr. Miller can thus only prevail by establishing

complicated pneumoconiosis and invoking the irrebuttable presumption of

disability due to pneumoconiosis.  *See* 30 U.S.C. § 921(c)(3).  Consistent with

Administrative Appeals Judge Boggs' dissent, the Court should vacate the ALJ's

finding that the x-ray evidence establishes complicated pneumoconiosis and

remand for the ALJ to substantively consider the x-ray readers' comments under

20 C.F.R. §§ 718.202(a)(1) and 718.304(a) before deciding what the x-ray

evidence establishes.



JA 252, 254, 256, 288.

*See id.* at 123, 252, 254, 256, 288.  As Judge

Boggs explained, these comments suggest a diagnosis other than pneumoconiosis

and/or render the x-ray interpreters' pneumoconiosis diagnoses equivocal.  *See id.*

at 67 (Boggs, J., dissenting).  Under the Board's precedent in *Melnick*, 16 Black

Lung Rep. (Juris.) 1-31, and *Cranor*, 22 Black Lung Rep. (Juris.) 1–1, the ALJ

needed to consider these comments under 20 C.F.R. §§ 718.202(a)(1) and

718.304(a) in determining whether the x-ray evidence established complicated pneumoconiosis. *See id.*

Nevertheless, the x-ray evidence was found to establish complicated pneumoconiosis without consideration of the effect of the x-ray readers' comments. *Id.* at 49. Instead, the ALJ mistakenly concluded the comments addressed the source or cause of the diagnosed pneumoconiosis, not its existence, meaning they needed to be considered at § 718.203(b)—the rebuttable presumption that pneumoconiosis arose out of coal mine employment—and not at § 718.202(a)(1):

> Employer argues that the opinions of Drs. Abrahams, Gaziano and Alexander are equivocal because they could not rule out other etiologies of miner's opacities. Thus, Employer urges me to discredit them. However, Employer overlooks the Board's position in *Cranor v. Peabody Coal Co*. In that case, the Board addressed the ALJ's treatment of an ILO form on which the position marked at 1/1 opacity but then commented "not CWP, etiology unknown." The Board found that such comments "merely address[ed] the source of the diagnosed pneumoconiosis" and must be addressed under 718.203, causation. Although the case at bar involves the diagnosis of complicated, not simple, pneumoconiosis, the same principle applies; because these physicians marked a large category A opacity consistent with complicated CWP, their comments are not properly considered at this juncture.

*Id.* n.19. The Board majority affirmed the ALJ's analysis. *Id.* at 63.

The ALJ and the Board majority misapply precedent in concluding the x-ray comments needed to be considered at § 718.203(b). As Judge Boggs explained, comments addressing the source of a pneumoconiosis diagnosed by x-ray are not

relevant to the issue of the existence of pneumoconiosis at § 718.202(a)(1).  *See id.*
at 66 (Boggs, J., dissenting) (citing *Cranor*, 22 Black Lung Rep. (Juris.) at 1-5–1-6; *Melnick*, 16 Black Lung Rep. (Juris.) at 1-37).  Rather, because such comments address the cause of pneumoconiosis, and not whether pneumoconiosis is present, they are relevant only under § 718.203(b).  *See id.*  Comments associated with the x-ray readings do not go towards the cause of diagnosed pneumoconiosis.  *See id.*
at 67.  Instead, by revealing the uncertainty of the diagnoses, the comments cast doubt on the credibility or internal consistency of the x-ray complicated-pneumoconiosis diagnoses.  *See id.*  Such comments, unlike those directed at the etiology of a diagnosed pneumoconiosis opacity, are properly considered under the existence of pneumoconiosis under § 718.202(a)(1).  *See id.*  Because the ALJ failed to consider the comments under §§ 718.202(a)(1) and 718.304(a), he did not take this evidence into account in finding the x-ray evidence established complicated pneumoconiosis.  *See id.*

*Melnick* is indistinguishable from this factual presentation.  In considering the x-ray evidence, an ALJ failed to address an additional notation the x-ray interpreter, Dr. Radebaugh, made on the ILO form.  *Melnick*, 16 Black Lung Rep. (Juris.) at 1-37.  Dr. Radebaugh classified the x-ray via the ILO scheme as showing simple pneumoconiosis and Category A large opacities.  *Id.*  Dr. Radebaugh also noted on the ILO form, "can't rule out mesothelioma either side."  *Id.*  It was

18

unclear whether this comment constituted an *alternative* diagnosis—thereby

calling into question the dispositive diagnosis of complicated pneumoconiosis—or

whether it represented an *additional* diagnosis of cancer, which would not

undermine the complicated-pneumoconiosis diagnosis. *Id.* The ALJ should have

considered the comment, together with Dr. Radebaugh's ILO classification, under

§ 718.202(a)(1). *Id.* Because the record contained no evidence the ALJ

substantively considered Dr. Radebaugh's comment, the Board remanded for the

ALJ to consider Dr. Radebaugh's entire x-ray report, including the additional

comments, when evaluating the x-ray evidence under § 718.202(a)(1). *Id.* As

*Melnick* is on all fours with this case, the same resolution was required here.

     *Cranor*, which the ALJ relied on, only reinforces *Melnick*'s holding. In

*Cranor* the Board explained *Melnick* concluded internal inconsistencies within an

x-ray classification that detract from credibility should be considered under

§ 718.202(a)(1). *Cranor*, 22 Black Lung Rep. at 1-5. Because the comments at

issue in *Cranor*[2] did not undermine the credibility of the positive ILO

classification, but instead addressed the cause of the diagnosed pneumoconiosis,

they were properly considered at § 718.203(b). *See id.*

     The comments on the x-ray interpretations do not go towards the causation

of diagnosed pneumoconiosis. Instead, by revealing the equivocality of their

---

[2]     The x-ray comment stated "not CWP etiology unknown. Compare to old

films. Need oblique views." *Cranor*, 22 Black Lung Rep. at 1-4.

pneumoconiosis diagnoses, the comments cast doubt on the credibility or internal consistency of the diagnoses. Such comments, unlike those directed at the etiology of a diagnosed pneumoconiosis opacity, are properly considered under § 718.202(a)(1).[3] As the x-ray comments go towards the diagnosis and not the etiology, the ALJ should have considered them under § 718.202(a)(1) when he analyzed whether the x-ray evidence supports finding pneumoconiosis. Because he did not, the ALJ's finding that the x-ray evidence establishes pneumoconiosis cannot be upheld.

**b.     The ALJ's further refusal to consider the x-ray readers' comments under 20 C.F.R. §§ 718.203(b) means the comments were never substantively considered.**

The ALJ compounded the failure to consider the x-ray comments under the appropriate regulations (20 C.F.R. §§ 718.202(a)(1) and 718.304(a)) by then refusing to consider the comments under the only other potentially applicable regulation—§ 718.203(b), the rebuttable presumption that diagnosed pneumoconiosis arose out of coal mine employment. After the ALJ determined Mr. Miller had complicated pneumoconiosis and at least 10 years of qualifying



coal mine employment, the ALJ applied the rebuttable presumption of

§ 718.203(b) to find the pneumoconiosis arose out of coal mine employment.

JA 54.  The ALJ found Coastal Coal did not offer contrary evidence to rebut the

presumption.  *Id.*

Notwithstanding the failure to consider the x-ray comments under

§ 718.202, the ALJ declared the comments effectively unreviewable even under

§ 718.203.  "To the extent that the x-ray comments are properly considered at this

juncture, suggestions that miner's x-ray showed lung cancer or an old

granulomatous disease do not constitute contrary evidence, as these disease

processes would not cause pneumoconiosis."  *Id.* n.31.  As Judge Boggs aptly

noted, "[t]his observation by the administrative law judge was on the mark and

underscores exactly why consideration of the comments is required at 20 C.F.R.

§ 718.202(a)(1) and 718.304(a)."  *Id.* at 66 n.15 (Boggs, J., dissenting).

The ALJ's finding is arbitrary and capricious, and constitutes a classic

"Catch-22" no-win situation.  With such a tortured construction of the evidence the

ALJ deemed appropriate to consider under § 718.202(a)(1) or § 718.203, the ALJ

effectively foreclosed any consideration whatsoever of the x-ray comments.  Either

the comments go towards the credibility of the pneumoconiosis diagnosis, to be

considered under § 718.202, or the comments go towards the etiology of the

diagnosed pneumoconiosis, to be considered under § 718.203.  The ALJ's

answer—the comments are not properly considered under either regulation—means the comments are never considered at all. Judge Boggs recognized this defect, agreeing "The effect of the administrative law judge's decision was that he did not consider the comments substantively at any point." JA 66. This violates the BLBA's command that "all relevant evidence" be considered in determining a claim. 30 U.S.C. § 923(b); *see also Dixie Fuel Co. v. Director, OWCP*, 700 F.3d 878, 880 (6th Cir. 2012) ("The Black Lung Benefits Act commands judges to consider '*all* relevant evidence' in determining the validity of a given claim."); *Elm Grove Coal Co. v. Director, OWCP*, 480 F.3d 278, 282 (4th Cir. 2007) (same).

The explanatory comments as to what the readers believed the x-ray changes may have shown are highly relevant evidence, as they question, if not completely undermine, the credibility of a pneumoconiosis diagnosis and make the contrary conclusions of Coastal Coal's experts comparatively more persuasive. The ALJ must consider such relevant evidence under §§ 718.202(a)(1) and 718.304(a) in making his initial determination about whether the x-ray evidence supported finding pneumoconiosis. His failure to do so results in a finding of complicated pneumoconiosis under § 718.202(a)(1) that is not supported by substantial evidence, accompanied by a presumption of coal-dust causation under § 718.203(b) that is effectively irrebuttable.

22

The Board majority nonetheless affirmed the ALJ's analysis under

§ 718.203(b):

> Because Employer must affirmatively establish that the source of
> Claimant's pneumoconiosis was not coal employment, it was within a
> reasonable exercise of the Administrative Law Judge's discretion to
> find that the comments, which suggested that other conditions, e.g., a
> tumor, lung cancer, or a granulomatous disease should be ruled out,
> and not sufficient to *affirmatively* rebut the presumption that
> Claimant's pneumoconiosis arose out of coal mine employment.

JA 64.

The majority overlooks the illogical and contradictory reasoning the ALJ

employs in finding Coastal Coal could not rebut the § 718.203(b) disease-causation

presumption. The ALJ concluded the x-ray readers' comments are not contrary

evidence with which to rebut the § 718.203(b) presumption only because the

different disease processes suggested by the comments (lung cancer or

granulomatous disease) would not be pneumoconiosis. *See id.* at 54 n.31. In other

words, the comments do not go towards the etiology of a diagnosed

pneumoconiosis, they go towards whether the disease identified on x-ray is

pneumoconiosis. This finding directly contradicts the ALJ's earlier finding under

§ 718.202(a)(1) that the readers' comments, like those in *Cranor*, address the

source of a diagnosed pneumoconiosis and must be considered under § 718.203(b).

*See id.* at 49 n.19. In short, the ALJ concludes comments cannot be considered

under § 718.202 because they must be considered under § 718.203, and they

23

cannot be considered under § 718.203 because they must be considered under § 718.202. A logical paradox cannot provide a reasoned basis for awarding benefits.

The finding that the x-ray evidence establishes complicated pneumoconiosis should be vacated and remanded for the ALJ to consider the x-ray readers' comments under §§ 718.202(a)(1) and 718.304(a). As the ALJ relied on the erroneous findings under §§ 718.202(a)(1) and 718.304(a) to determine the credibility of the physicians' opinions, "the error permeated the rest of his opinion." JA 67 (Boggs, J., dissenting). The Court should therefore also vacate the ALJ's findings regarding the physicians' opinions under § 718.304(b) and vacate for further consideration.

> **2.    The ALJ failed to weigh the biopsy, CT-scan, and PET-scan evidence against the x-ray evidence. The ALJ thus failed to weigh all relevant evidence and to consider whether the biopsy, CT-scan, and PET-scan evidence suggest pneumoconiosis is less likely.**

The Board majority erred in not holding the ALJ to the task of weighing all relevant medical evidence together and making factual findings based on a comparative review of all evidence. As Judge Boggs explained, the ALJ separately considered each § 718.304 category of evidence from the perspective of whether that particular category established complicated pneumoconiosis; "however, when considering all of the relevant evidence, like and unlike, the question is whether the medical evidence that did not establish complicated

24

pneumoconiosis also undercut the credibility of the evidence to the contrary (and vice versa)." JA 67 (Boggs, J., dissenting). All relevant evidence must be weighed together to determine whether pneumoconiosis is established in a given case. *See Dixie Fuel*, 700 F.3d at 880; *Cox*, 602 F.3d at 283; *Elm Grove Coal*, 480 F.3d at 282; *Compton*, 211 F.3d at 211; *Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22, 25 (3d Cir. 1997).

This agency record contained biopsy, CT-scan, and PET-scan evidence—all potentially relevant to whether Mr. Miller has pneumoconiosis. ██████████ ██████████████████████████████████████████████████ ██████████████ JA 87. ████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████ *Id.* ██████████████████████████████████████ ██████████████████████████████████████ The ALJ found the biopsy evidence did not support finding complicated pneumoconiosis, and found it inconclusive for simple coal workers' pneumoconiosis. *Id.* at 49–50, 50 n.20. ██████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████ *Id.* at 80, 95, 106. The ALJ found the CT-scan and PET-scan evidence did not support finding complicated or simple pneumoconiosis. *Id.* at 51 & n.25.

25

The ALJ appears to agree the biopsy, CT-scan, and PET-scan evidence all fail to establish pneumoconiosis. Yet, as the ALJ mechanically considered the § 718.304 evidence categories in isolation in finding complicated pneumoconiosis and failed to weigh the categories together as required, he failed to consider whether the other evidence[4] (here biopsy, CT-scan, and PET-scan evidence) made a finding of complicated pneumoconiosis based on the x-ray evidence less reasonable. In view of the highly relevant nature of biopsy, CT-scan, and PET-scan evidence, the ALJ may well have reconsidered his finding.

Pathology evidence, such as biopsy or autopsy, "is the most reliable evidence of the existence and degree of pneumoconiosis." *Melnick*, 16 Black Lung Rep. (Juris.) at 1-33. CT-scans are considered superior to x-rays in accurately depicting pneumoconiosis in lung tissue. *See, e.g. Thornberry v. Island Creek Coal Co.*, BRB No. 11-0350 BLA, at 6 (Feb. 28, 2012) (unpub.); *Herndon v. CK Coal Corp.*, BRB No. 09-0419 BLA, at 3 (Feb. 22, 2010) (unpub.); *see also* EE 2 at 30–31 (a CT scan "is much more sensitive in looking at abnormalities in the lungs than a routine chest radiograph."). Here, biopsy, CT-scan, and PET-scan evidence all failed to support finding either simple or complicated pneumoconiosis, and the pathologist reviewing the biopsy slides even commented that "clinical *exclusion* of pneumoconiosis could be warranted." While required in every case,

---

[4]    20 C.F.R. § 718.304(c) mandates the consideration of other medical evidence and § 718.304(b) mandates consideration of biopsy evidence.

26

the need to weigh the biopsy, CT-scan, and PET-scan evidence against the x-ray evidence is particularly important here, given the uncertain nature of the x-ray interpretations and the x-ray interpreters' requests to consider more information (such as biopsy and CT-scans) in order to reach conclusive diagnoses. Whatever the x-ray evidence may tend to show when considered in isolation, when weighed together with the biopsy, CT-scan, and PET-scan evidence, any x-ray findings of pneumoconiosis become much less persuasive.

This Court previously explained:

> The statute governing the evidence required to establish a claim for black lung benefits states that "[i]n determining the validity of claims . . . all relevant evidence shall be considered." 30 U.S.C.A. § 923(b). The plain meaning of this statutory language is that all relevant evidence is to be considered together rather than merely within discrete subsections of § 718.202(a).

*Compton*, 211 F.3d at 208; *see also Williams*, 114 F.3d at 25 (criticizing the Board for relying solely on x-ray evidence and failing to consider biopsy evidence). The Director agrees with this interpretation. "This reading respects the Director's own interpretation of the regulation. According to the Director, 'although section 718.202(a) enumerates four distinct methods of establishing pneumoconiosis, all types of relevant evidence *must be weighed together* to determine whether the claimant suffers from the disease.'" *Dixie Fuel*, 700 F.3d at 881.

Nothing indicates the ALJ weighed the biopsy, CT-scan, and PET-scan evidence against or together with the x-ray evidence. In his weighing analysis, the

27

ALJ only mentioned the biopsy, CT-scan, and PET-scan evidence to say whether it revealed lung cancer. *See* JA 53. ("Additionally . . . the radiologists doing the CT reports and the chest x-rays seriously considered whether or not the large masses . . . represented malignancy. The needle biopsy was negative for malignancy and even though Dr. Maxwell urged a resection, there is no indication in the record that miner developed cancer after that time.") (internal quotation marks omitted). And as Judge Boggs noted, the ALJ's weighing of the biopsy evidence was further erroneous because he failed to consider the pathologist's comments that "clinical exclusion of pneumoconiosis could be warranted." *Id.* at 67 (Boggs, J., dissenting). The ALJ's failure to weigh the highly accurate biopsy, CT-scan, and PET-scan evidence against the less accurate x-ray evidence renders his finding of complicated pneumoconiosis unreasoned and invalid.

### 3. The ALJ erroneously applied *Westmoreland Coal Co. v. Cox* in finding complicated pneumoconiosis established.

In the course of weighing the evidence as a whole, the ALJ ultimately found complicated pneumoconiosis established by applying *Westmoreland Coal Co. v. Cox*, 602 F.3d 276. "In the present claim, as in *Cox*, there is no dispute that the x-ray evidence establishes the presence of at least one large opacity A–C, which constitutes a finding of complicated pneumoconiosis." JA 53. The ALJ noted the x-ray and CT-scan interpreters considered malignancy as the potential cause of the alleged pneumoconiosis mass but the record failed to reflect this malignancy, and

28

that "there is no evidence to support a finding of granulomatous disease, a diagnosis that only Dr. Sawyer even nominally considered." *Id.* "Therefore," the ALJ held, "as in *Cox*, Employer's 'experts' opinions [do] not constitute affirmative evidence sufficient to weaken the claimant's x-ray evidence showing large opacities that satisf[y] the statutory definition of complicated pneumoconiosis.'" *Id.* (quoting *Cox,* 602 F.3d at 287). He then found complicated pneumoconiosis was established by the evidence as a whole. *Id.*

The ALJ misapplied *Cox*. In *Cox*, the claimant proffered multiple x-ray readings showing opacities greater than one centimeter in diameter, as well as CT-scans also showing opacities. *Cox*, 602 F.3d at 279–81. This Court upheld the ALJ's requirement that, upon the showing of these opacities, the employer "must provide evidence that affirmatively shows the opacities are not there or that they are from a disease process other than complicated pneumoconiosis." *Id.* at 283. The Court explained this passage was consistent with its holding in *Scarbro*, that,

> [I]f the x-ray evidence vividly displays opacities exceeding one centimeter, its probative force is not reduced because the evidence under some other prong is inconclusive or less vivid. Instead, the x-ray evidence can lose force only if other evidence affirmatively shows that the opacities are not there or are not what they seem to be, perhaps because of an intervening pathology, some technical problem . . . , or incompetence of the reader.

*Id.* at 283–84 (quoting *Eastern Assoc. Coal Corp. v. Director, OWCP [Scarbro]*, 220 F.3d 250, 256 (4th Cir. 2000)).

29

*Cox* made explicit an implicit rule of evidentiary strength: when certain evidence is overwhelmingly positive for complicated pneumoconiosis, it can only become less persuasive if other evidence undermines its driving assumptions. Thus, where the x-ray evidence "vividly displays opacities exceeding one centimeter," *id.* at 283, an employer must produce affirmative evidence casting doubt on the opacities' existence or etiology. *See id.* at 283–84.

Unlike the employer in *Cox*, here Coastal Coal has presented such affirmative evidence. In Mr. Miller's case, Coastal Coal introduced biopsy evidence indicating the alleged complicated-pneumoconiosis opacity does not exist. Coastal Coal also introduced the opinions of Dr. Basheda, that the opacity is due to old granulomatous disease and not pneumoconiosis, and of Dr. Maxwell, who did not diagnose coal workers' pneumoconiosis in his treatment of Mr. Miller.[5] ██████████████████████████████

---

[5]     The black lung regulations express a preference for a treating-physician's medical opinion. Title 20 C.F.R. §718.104(d) requires the analysis of four factors concerning the treating relationship between the miner and any treating physician whose report is admitted. The fact-finder must take the following into consideration in weighing a treating physician's opinion:

> (1) <u>The nature of relationship</u>. The opinion of a physician who has treated the miner for respiratory or pulmonary conditions is entitled to more weight than a physician who has treated the miner for non-respiratory conditions;

███████████████████████████████  *See* JA 80, 81, 85.  Per *Cox* and

*Scarbro*, Coastal satisfied its burden to introduce affirmative evidence causing the

large opacities seen on x-ray to lose force.  *See Cox*, 602 F.3d at 283–84.

By finding Coastal Coal did not offer affirmative evidence to counteract the

findings of x-ray opacities, the ALJ incorrectly held Coastal Coal failed to satisfy

its burden of production under *Cox*, necessitating an award of benefits.  As Coastal

Coal satisfied the *Cox* burden of production, the ALJ was required to weigh

Coastal Coal's affirmative evidence against the x-ray evidence.  Because the ALJ

instead dismissed Coastal Coal's affirmative evidence pursuant to his

misapplication of *Cox*, the Court should vacate and remand.

---

(2) Duration of relationship.  The length of the treatment relationship demonstrates whether the physician has observed the miner long enough to obtain a superior understanding of his or her condition;

(3) Frequency of treatment.  The frequency of physician/patient visits demonstrates whether the physician has observed the miner often enough to obtain a superior understanding of his or her condition; and

(4) Extent of treatment.  The types of testing and examinations conducted during the treatment relationship demonstrate whether the physician has obtained superior and relevant information concerning the miner's condition.

§ 718.104(d)(1)–(4).  Where the physician/patient relationship meets the requirements of these factors, that relationship "may constitute substantial evidence" to support giving the opinion "controlling weight, provided that the weight given to the opinion . . . shall also be based upon the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole."  *Id.* § 718.104(d)(5).

**4.    The ALJ erred in crediting the medical opinions of Drs. Jaworski and Gaziano and in discrediting the medical opinions of Drs. Maxwell and Basheda.**

In analyzing the medical-opinion evidence, the ALJ gave "little weight" to the opinions of Drs. Maxwell and Basheda, "limited weight" to Dr. Jaworski's opinion, and "some weight" to Dr. Gaziano's opinion. JA 51–53. Based on these findings, the ALJ concluded the medical-opinion evidence overall supports finding complicated pneumoconiosis. *Id.* at 53. The ALJ's analysis is irrational, unsupported by substantial evidence, and contrary to law.

**a.    Dr. Steven L. Maxwell**

Dr. Maxwell's observations were entitled to significant weight as Mr. Miller's treating physician. An ALJ shall take into consideration the opinion of a claimant's treating physician with regard to issues such as the existence of pneumoconiosis, whether the claimant's pneumoconiosis arose out of his coal mine employment, and whether the claimant is totally disabled by pneumoconiosis. 20 C.F.R. § 718.104(d). ███████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████ *See* JA 80–111, 261.

He treated Mr. Miller about every six months for a five-year period, and Mr. Miller agreed Dr. Maxwell would be very familiar with his medical condition. *Id.* at

32

31-32. Dr. Maxwell's conclusions were based upon medical determinations regarding Mr. Miller's best course of treatment. Dr. Maxwell's assessment was entitled to substantial weight under the black lung regulations. *See* § 718.104(d).

Despite these factors, the ALJ gave short shrift to Dr. Maxwell's opinion. "While I cannot dispute Dr. Maxwell's qualifications or the duration of treatment, I find his opinion to be poorly-reasoned and documented." JA 53. The ALJ found "Dr. Maxwell could not entertain the possibility that miner had both heart issues and an independent pulmonary condition, nor did he try to clarify the specifics of miner's disease processes." *Id.* The ALJ also found Dr. Maxwell "acknowledged that PMF should have been included in a differential diagnosis; he simply did not record it because he was uncertain of the diagnosis, in part because he did not find a background of simple CWP by radiology, contrary to my findings." *Id.* The ALJ's dismissal of Dr. Maxwell's opinion represents a misinterpretation of the treating physician's medical opinion, an insufficient attention to Dr. Maxwell's experience treating Mr. Miller's lung condition, and a misunderstanding of the ALJ's role as fact-finder and not medical expert. In essence, the ALJ usurps Dr. Maxwell's expert medical judgment and replaces it with the ALJ's legal findings.

The ALJ misconstrues Dr. Maxwell's opinion by claiming the doctor "could not entertain the possibility that miner had both heart issues and an independent

pulmonary condition." *Id.* There is no basis in this record for the lay, non-expert,

agency fact-finder to determine what possibilities Dr. Maxwell considered.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

██████████████ *See id.* at 272–77. ████████████████████

███████████████████████████████████████████

██████████████████████████████████████ *See id.*

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████ *Id.* at

273. While the ALJ casually dismisses Dr. Maxwell's treatment approach

("He simply did not record it because he was uncertain of the diagnosis," *id.* at 53),

his criticism boils down to faulting Dr. Maxwell for not diagnosing a particular

disease. Such an analysis is inappropriate. A fact-finder is not equipped to

determine the proper course of medical treatment. *See Hicks*, 138 F.3d at 533

(ALJ cannot substitute untrained opinion for that of qualified experts); s*ee also*

*Walker v. Director, OWCP*, 927 F.2d 181, 185 (4th Cir. 1991). The ALJ

34

overstepped his realm of authority in dismissing Dr. Maxwell's medical conclusions and treatment by claiming the expert physician failed to clarify the disease process.

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████████████████    JA 262.  There is no basis to conclude, based merely on Dr. Maxwell's comments that he was concerned with Mr. Miller's heart issues, that Dr. Maxwell "could not entertain the possibility" that Mr. Miller also had a lung condition.  Mr. Miller testified that Dr. Maxwell would be quite familiar with his physical condition.  *See id.* at 32.  Dr. Maxwell's analysis was informed by his ongoing personal treatment of Mr. Miller for lung disease.  While the ALJ apparently did not believe this to be so, such a finding lacks a basis in substantial evidence and cannot be sustained.  Because the ALJ errantly dismissed Dr. Maxwell's opinion, the conclusion that the medical-opinion evidence supports finding complicated pneumoconiosis cannot be upheld.

### b.    Dr. Stephen G. Basheda

As he did with Dr. Maxwell's opinion, the ALJ gave "little weight" to Dr. Basheda's opinion.  *Id.* at 52.  The ALJ reasoned:

> Given the absence of underlying simple CWP, he found PMF to be an unlikely diagnosis.  As previously addressed, however, I find that the

35

x-ray evidence *does* show a "setting of simple CWP." Additionally, the Regulations do not require a finding of impairment to support a finding of complicated CWP. Finally, Dr. Basheda believed that miner does not suffer from CWP/PMF because miner's radiographic changes "waxed and waned" over time, which was inconsistent with a coal-dust induced process. As the District Director pointed out, however, "Dr. Basheda . . .fail[ed] to mention that Dr. Cavazos thought . . . that the difference could be due to slice selection." Therefore, I give little weight to Dr. Basheda's opinion attributing miner's lung abnormalities to a benign process such as histoplasmosis, old microbacterial disease like TB, or possibly sarcoidosis, rather than to CWP/PMF.

*Id.* The ALJ further noted:

Dr. Basheda also relied on the granulomatous findings by x-ray, noting that "[a]reas of granulomatous inflammation from prior infection or inflammation can result in parenchymal densities that may mimic a nodule or tumor." Furthermore, because he believed that old granulomatous disease would explain all of miner's radiographic abnormalities, he did not find any reason to invoke a second diagnosis (i.e. PMF). However, this reasoning fails to account for the possibility that miner suffered from a granulomatous disease as well as from pneumoconiosis.

*Id.* at n.29.

The ALJ's reasoning for rejecting Dr. Basheda's opinion is not supported by substantial evidence. First, as explained above, the ALJ improperly analyzed the x-ray evidence in finding it established both simple and complicated pneumoconiosis. *See supra.* As the finding of pneumoconiosis is unjustified under § 718.202(a)(1), that Dr. Basheda reached the opposite conclusion about simple pneumoconiosis on the x-rays cannot justify discrediting his opinion.

36

████████████████████████████████

█████████████████████████████████████

██████████████████████████████████

█████████████████████████████████

*See* JA 243 ████████████████████

█████████████████████████████████████

█████████████████████████████████    Though by no means conclusive, a lack of

respiratory impairment is supportive evidence that a large nodule is not

complicated pneumoconiosis.  There is no regulatory basis requiring doctors to

examine suspected complicated pneumoconiosis in a complete vacuum from the

disease's expected clinical effects.  While doctors cannot rule out complicated

pneumoconiosis *solely* by lack of impairment, neither must they wholly ignore

such evidence.

Third, discounting Dr. Basheda's opinion on the ground that he failed to

address Dr. Cavazos's belief that the radiographic changes' waxing and waning

could be due to "slice selection" impermissibly shifts the burden of proof to

Coastal Coal.  Requiring Dr. Basheda to refute every conceivable response to his

medical conclusions—even one as obscure as "slice selection," mentioned as a

mere possibility in only one CT-scan interpretation—upon penalty of being fully

37

discredited effectively requires Coastal Coal to affirmatively rule out

pneumoconiosis. Coastal Coal only has this burden if the 15-year presumption

applies, and it does not apply in this case. As the one seeking a benefits award,

Mr. Miller has the burden of persuasion to establish entitlement by a

preponderance of the evidence. *See Director, OWCP v. Greenwich Collieries*,

512 U.S. 267, 277–78 (1994); *Toler v. Eastern Assoc. Coal Co.*, 43 F.3d 109

(4th Cir. 1995). The ALJ's willingness to discredit Dr. Basheda for not expanding

already well-detailed reasoning with replies to selected, obscure counterarguments

wrongly suggests it is Coastal Coal's burden to disprove entitlement to benefits.

    Finally, the ALJ's critique that Dr. Basheda failed to consider whether

Mr. Miller suffered from both granulomatous disease and pneumoconiosis is

logically false and stems from a misunderstanding of Dr. Basheda's reasoning.

Dr. Basheda provided detailed, multifaceted reasoning for finding the radiographic

evidence consistent with old granulomatous disease and inconsistent with

pneumoconiosis. *See supra*. In Dr. Basheda's view, pneumoconiosis was not

revealed by the x-rays and CT-scans, so he was able to exclude the disease as a

potential diagnosis. If Dr. Basheda is right that the evidence shows Mr. Miller

does not have pneumoconiosis, then the evidence also necessarily shows

Mr. Miller does not have pneumoconiosis in addition to old granulomatous disease.

Dr. Basheda therefore did consider the possibility that Mr. Miller has co-existing

pneumoconiosis and granulomatous disease: he concluded the diseases do not co-exist in Mr. Miller because Mr. Miller does not have pneumoconiosis in the first place. In any event, discrediting Dr. Basheda for supposedly not considering other means of diagnosing a given disease improperly substitutes an ALJ's inexpert lay opinion for that of a medical expert, contrary to the BLBA. *See Hicks*, 138 F.3d at 533; s*ee also Walker*, 927 F.2d at 185. Because the ALJ errantly dismissed Dr. Basheda's opinion, the conclusion that the medical-opinion evidence supports finding complicated pneumoconiosis cannot be upheld.

### c.      Dr. Andrzej J. Jaworski

The ALJ gave limited weight to Dr. Jaworski's opinion. "This opinion is consistent with my determination that the weight of the x-ray evidence establishes the presence of simple and complicated pneumoconiosis." JA 51. As explained above, the ALJ's analysis of the x-ray evidence is flawed. *See supra* at 15–24. The ALJ provided no other justification for crediting Dr. Jaworski's opinion; in fact, he provided several reasons for discrediting the opinion. *See* JA 51 ("However, it is unclear whether Dr. Jaworski actually reviewed the biopsy results himself, or whether he relied on miner's explanation of them. Additionally, Dr. Jaworski did not review additional medical records."). Because the ALJ's partial crediting of Dr. Jaworski's opinion derives from a legally invalid

conclusion, and because the ALJ fails to consider all relevant evidence in evaluating this opinion, the medical-opinion evidence findings cannot be upheld.

### d.    Dr. Dominic Gaziano

Similar to his treatment of Dr. Jaworski's opinion, the ALJ gave "some" weight to Dr. Gaziano's opinion because it "is consistent with the x-ray findings." *Id.* at 52.  This is a legally invalid rationale.  *See supra.*  As with Dr. Jaworski's opinion, the ALJ gives no other reason to credit Dr. Gaziano's opinion, and instead gives several reasons to discredit it.  *See* JA 52 n.27.  Because the ALJ's x-ray-evidence findings cannot stand, and because the ALJ fails to consider all relevant evidence in evaluating this opinion, the ALJ's analysis cannot support even partially crediting Dr. Gaziano's opinion.

The ALJ's reasoning for discrediting the medical opinions of Drs. Basheda and Maxwell and crediting the opinions of Drs. Jaworski and Gaziano is irrational, unsupported by substantial evidence, and contrary to law.  The ALJ's conclusion that the medical-opinion evidence supports finding complicated pneumoconiosis should be vacated and remanded for further consideration.

40

## VII.    CONCLUSION

Coastal Coal-West Virginia, LLC respectfully requests the Board's decision and order affirming the ALJ's award of benefits be reversed, or vacated and remanded for reconsideration under the BLBA and black lung regulations.


Respectfully submitted,

**COASTAL COAL-WEST VIRGINIA, LLC,**

By Counsel.


/s/ Jeffrey R. Soukup
Jeffrey R. Soukup
Kentucky Bar No. 92029
Jackson Kelly PLLC
175 E. Main St., Ste. 500
Lexington, KY  40507
(859) 288-2826

## VIII.    REQUEST FOR ORAL ARGUMENT

This case presents questions of law important for consideration of claims under the BLBA.  Coastal Coal respectfully requests this matter be set for oral argument to assist this Court in understanding the full extent of the medical, legal, and factual issues presented by the case.

## IX.    ADDENDUM OF STATUTES, RULES, and REGULATIONS

**30 U.S.C. § 921:**

(a) Promulgation; payment of benefits

The Secretary shall, in accordance with the provisions of this part, and the regulations promulgated by him under this part, make payments of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of the death of any miner whose death was due to pneumoconiosis or, except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, who at the time of his death was totally disabled by pneumoconiosis.

(b) Promulgation of standards determining total disability

The Secretary shall by regulation prescribe standards for determining for purposes of subsection (a) of this section whether a miner is totally disabled due to pneumoconiosis and for determining whether the death of a miner was due to pneumoconiosis. Regulations required by this subsection shall be promulgated and published in the Federal Register at the earliest practicable date after December 30, 1969, and in no event later than the end of the third month following December 1969. Final regulations required for implementation of any amendments to this subchapter shall be promulgated and published in the Federal Register at the earliest practicable date after the date of enactment of such amendments, and in no event later than the end of the fourth month following the month in which such amendments are enacted. Such regulations may be modified or additional regulations promulgated from time to time thereafter.

(c) Presumptions

For purposes of this section--

> **(1)** If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment.

> **(2)** If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable

43

presumption that his death was due to pneumoconiosis. The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981.

(3) If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. as the case may be.

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

(5) In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30,

44

1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death. The provisions of this paragraph shall not apply with respect to claims filed on or after the day that is 180 days after the effective date of the Black Lung Benefits Amendments of 1981.

(d) Applicability of presumptions

Nothing in subsection (c) of this section shall be deemed to affect the applicability of subsection (a) of this section in the case of a claim where the presumptions provided for therein are inapplicable.

**30 U.S.C. § 923:**

(a) Promulgation of regulations; time requirement

Except as otherwise provided in section 924 of this title, no payment of benefits shall be made under this part except pursuant to a claim filed therefor on or before December 31, 1973, in such manner, in such form, and containing such information, as the Secretary shall by regulation prescribe.

(b) Utilization of personnel and procedures; evidence required to establish claim; medical evidence; affidavits; autopsy reports; reimbursement of expenses

No claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram. In determining the validity of claims under this part, all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials. Where there is no medical or other relevant evidence in the case of a deceased miner, such affidavits, from persons not eligible for benefits in such case with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981, shall be considered to be sufficient to establish that the miner was totally disabled due to

pneumoconiosis or that his or her death was due to pneumoconiosis. In any case, other than that involving a claim filed on or after the effective date of the Black Lung Benefits Amendments of 1981, in which there is other evidence that a miner has a pulmonary or respiratory impairment, the Secretary shall accept a board certified or board eligible radiologist's interpretation of a chest roentgenogram which is of a quality sufficient to demonstrate the presence of pneumoconiosis submitted in support of a claim for benefits under this subchapter if such roentgenogram has been taken by a radiologist or qualified technician, except where the Secretary has reason to believe that the claim has been fraudulently represented. In order to insure that any such roentgenogram is of adequate quality to demonstrate the presence of pneumoconiosis, and in order to provide for uniform quality in the roentgenograms, the Secretary of Labor may, by regulation, establish specific requirements for the techniques used to take roentgenograms of the chest. Unless the Secretary has good cause to believe that an autopsy report is not accurate, or that the condition of the miner is being fraudulently misrepresented, the Secretary shall accept such autopsy report concerning the presence of pneumoconiosis and the stage of advancement of pneumoconiosis. Claimants under this part shall be reimbursed for reasonable medical expenses incurred by them in establishing their claims. For purposes of determining total disability under this part, the provisions of subsections (a), (b), (c), (d), and (g) of section 221 of such Act shall be applicable. The provisions of sections 204, 205(a), (b), (d), (e), (g), (h), (j), (k), (l), and (n), 206, 207, and 208 of the Social Security Act shall be applicable under this part with respect to a miner, widow, child, parent, brother, sister, or dependent, as if benefits under this part were benefits under Title II of such Act. Each miner who files a claim for benefits under this subchapter shall upon request be provided an opportunity to substantiate his or her claim by means of a complete pulmonary evaluation.

(c) Filing of claim for workmen's compensation; necessity; exceptions

No claim for benefits under this section shall be considered unless the claimant has also filed a claim under the applicable State workmen's compensation law prior to or at the same time his claim was filed for benefits under this section; except that the foregoing provisions of this paragraph shall not apply in any case in which the filing of a claim under such law would clearly be futile because the period within which such a claim may be filed thereunder has expired or because pneumoconiosis is not compensable under such law, or in any other situation in which, in the opinion of the Secretary, the filing of a claim would clearly be futile.

(d) Employment termination and benefits entitlement

46

No miner who is engaged in coal mine employment shall (except as provided in section 921(c)(3) of this title) be entitled to any benefits under this part while so employed. Any miner who has been determined to be eligible for benefits pursuant to a claim filed while such miner was engaged in coal mine employment shall be entitled to such benefits if his or her employment terminates within one year after the date such determination becomes final.

**20 C.F.R. §718.104:**

(a) A report of any physical examination conducted in connection with a claim shall be prepared on a medical report form supplied by the Office or in a manner containing substantially the same information. Any such report shall include the following information and test results:

    (1) The miner's medical and employment history;

    (2) All manifestations of chronic respiratory disease;

    (3) Any pertinent findings not specifically listed on the form;

    (4) If heart disease secondary to lung disease is found, all symptoms and significant findings;

    (5) The results of a chest X-ray conducted and interpreted as required by § 718.102; and

    (6) The results of a pulmonary function test conducted and reported as required by § 718.103. If the miner is physically unable to perform a pulmonary function test or if the test is medically contraindicated, in the absence of evidence establishing total disability pursuant to § 718.304, the report must be based on other medically acceptable clinical and laboratory diagnostic techniques, such as a blood gas study.

(b) In addition to the requirements of paragraph (a), a report of physical examination may be based on any other procedures such as electrocardiogram, blood-gas studies conducted and reported as required by § 718.105, and other blood analyses which, in the physician's opinion, aid in his or her evaluation of the miner.

47

(c) In the case of a deceased miner, where no report is in substantial compliance with paragraphs (a) and (b), a report prepared by a physician who is unavailable may nevertheless form the basis for a finding if, in the opinion of the adjudication officer, it is accompanied by sufficient indicia of reliability in light of all relevant evidence.

(d) Treating physician. In weighing the medical evidence of record relevant to whether the miner suffers, or suffered, from pneumoconiosis, whether the pneumoconiosis arose out of coal mine employment, and whether the miner is, or was, totally disabled by pneumoconiosis or died due to pneumoconiosis, the adjudication officer must give consideration to the relationship between the miner and any treating physician whose report is admitted into the record. Specifically, the adjudication officer shall take into consideration the following factors in weighing the opinion of the miner's treating physician:

(1) Nature of relationship. The opinion of a physician who has treated the miner for respiratory or pulmonary conditions is entitled to more weight than a physician who has treated the miner for non-respiratory conditions;

(2) Duration of relationship. The length of the treatment relationship demonstrates whether the physician has observed the miner long enough to obtain a superior understanding of his or her condition;

(3) Frequency of treatment. The frequency of physician-patient visits demonstrates whether the physician has observed the miner often enough to obtain a superior understanding of his or her condition; and

(4) Extent of treatment. The types of testing and examinations conducted during the treatment relationship demonstrate whether the physician has obtained superior and relevant information concerning the miner's condition.

(5) In the absence of contrary probative evidence, the adjudication officer shall accept the statement of a physician with regard to the factors listed in paragraphs (d)(1) through (4) of this section. In appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the adjudication officer's decision to give that physician's opinion controlling weight, provided that the weight given to the opinion of a miner's treating physician shall also be based on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole.

48

**20 C.F.R. § 718.202:**

(a) A finding of the existence of pneumoconiosis may be made as follows in paragraphs (a)(1) through (4) of this section:

> (1) A chest X–ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis. Except as otherwise provided in this section, where two or more X–ray reports are in conflict, in evaluating such X–ray reports consideration must be given to the radiological qualifications of the physicians interpreting such X–rays (see § 718.102(d)).

> (2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis. A finding in an autopsy or biopsy of anthracotic pigmentation, however, must not be considered sufficient, by itself, to establish the existence of pneumoconiosis. A report of autopsy must be accepted unless there is evidence that the report is not accurate or that the claim has been fraudulently represented.

> (3) If the presumptions described in § 718.304 or § 718.305 are applicable, it must be presumed that the miner is or was suffering from pneumoconiosis.

> (4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X–ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding must be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding must be supported by a reasoned medical opinion.

(b) A claim for benefits must not be denied solely on the basis of a negative chest X–ray.

(c) A determination of the existence of pneumoconiosis must not be made--

> (1) Solely on the basis of a living miner's statements or testimony; or

49

(2) In a claim involving a deceased miner, solely on the basis of the affidavit(s) (or equivalent testimony) of the claimant and/or his or her dependents who would be eligible for augmentation of the claimant's benefits if the claim were approved.

## 20 C.F.R. § 718.203:

(a) In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose at least in part out of coal mine employment. The provisions in this section set forth the criteria to be applied in making such a determination.

(b) If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment.

(c) If a miner who is suffering or suffered from pneumoconiosis was employed less than ten years in the nation's coal mines, it shall be determined that such pneumoconiosis arose out of that employment only if competent evidence establishes such a relationship.

## 20 C.F.R. § 718.304:

There is an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis, that a miner's death was due to pneumoconiosis or that a miner was totally disabled due to pneumoconiosis at the time of death, if such miner is suffering or suffered from a chronic dust disease of the lung which:

(a) When diagnosed by chest X–ray (see § 718.202 concerning the standards for X–rays and the effect of interpretations of X–rays by physicians) yields one or more large opacities (greater than one centimeter in diameter) and would be classified in Category A, B, or C in accordance with the classification system established in Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses as provided in § 718.102(d); or

(b) When diagnosed by biopsy or autopsy, yields massive lesions in the lung; or

(c) When diagnosed by means other than those specified in paragraphs (a) and (b) of this section, would be a condition which could reasonably be expected to yield the results described in paragraph (a) or (b) of this section had diagnosis been

50

made as therein described: *Provided, however*, that any diagnosis made under this paragraph must accord with acceptable medical procedures.

## X.    CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

No.14-2012    Caption:  <u>Coastal Coal-West Virginia, LLC v. Richard L.
Miller</u>

1.    This brief complies with the type-volume limitation of Fed.R.App.P.
32(a)(7)(B) because:

this brief contains **9.075** words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5)
and the type style requirements of Fed.R.App.P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using
Microsoft Word  2010 Version in Times New Roman 14 point font.


<u>/s/ Jeffrey R. Soukup</u>
*Counsel for Coastal Coal-West Virginia, LLC*

Dated: November 19, 2014

## XI.    CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the **Opening Brief of Petitioner, Coastal Coal-West Virginia, LLC,** was served upon the following by electronic delivery and UPS Ground this **19th** day of November, 2014.

**ELECTRONIC &**         Patricia S. Connor, Clerk of Court
**OVERNIGHT:**           United States Court of Appeals for the Fourth Circuit
                         Lewis F. Powell, Jr. United States Courthouse Annex
                         1100 E. Main Street, Suite 501
                         Richmond, VA  23219-3517

**ELECTRONIC:**          Otis R. Mann, Jr., Esq.
                         215 Hale Street
                         Charleston, WV  25301-2207
                         jenniferwatkins@frontier.com

                         Sean G. Bajkowski, Esq.
                         Helen H. Cox, Esq.
                         U. S. Department of Labor
                         Office of the Solicitor
                         Frances Perkins Building, Suite N-2119
                         200 Constitution Avenue, N.W.
                         Washington, DC  20210
                         blls-sol@dol.gov
                         cox.helen@dol.gov


                                   /s/ Jeffrey R. Soukup
                                   *Counsel for Coastal Coal-West Virginia,*
                                   *LLC*