



JACKSONKELLY
ATTORNEYS AT LAW    PLLC

150 CLAY STREET • SUITE 500 • P.O. BOX 619 • MORGANTOWN, WEST VIRGINIA 26507 • TELEPHONE: 304-284-4100 • TELECOPIER: 304-284-4140
www.jacksonkelly.com
wmattingly@jacksonkelly.com
(304) 284-4110

January 21, 2014

**Via Overnight Delivery & Certified Mail:**

Thomas O. Shepherd, Jr.
Benefits Review Board
ATTN: Clerk of the Board
Room S-5220
200 Constitution Avenue, N.W.
P.O. Box 37601
Washington, DC 20210

> Re:    Federal Black Lung Claim
> Richard L. Miller v. Coastal Coal-West Virginia, LLC
> BRB No.:    2013-0213
> Case No.:    2011-BLA-6129
> OWCP No.    XXX-XX-7181
> JK Ref. No.:    1762/532

Dear Mr. Shepherd:

Enclosed please find the original and two copies of **Coastal Coal-West Virginia, LLC's Motion Requesting Reconsideration and Rehearing** *en banc* for filing in the above-referenced federal black lung claim.

Sincerely,

William S. Mattingly

Enclosure
cc:    Otis R. Mann, Jr., Esq.
Helen H. Cox, Associate Solicitor
Rhonda Livesay, HealthSmart Casualty Claims Solutions
M0922442.DOC/JRS:mw

Charleston, WV • Clarksburg, WV • Martinsburg, WV • Morgantown, WV • Wheeling, WV
Denver, CO • Evansville, IN • Indianapolis, IN • Lexington, KY • Pittsburgh, PA • Washington, DC

UNITED STATES DEPARTMENT OF LABOR
BENEFITS REVIEW BOARD

**WASHINGTON, DC**

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| COASTAL COAL-WEST VIRGINIA, LLC, ) | |
| ) | BRB No.: 2013-0213 BLA |
| Petitioner, ) | |
| ) | Case No.: 2011-BLA-6129 |
| v. ) | |
| ) | |
| RICHARD LEE MILLER, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| and ) | |
| ) | |
| DIRECTOR, OFFICE OF WORKERS' ) | |
| COMPENSATION PROGRAMS, ) | |
| ) | |
| Party-in-Interest. ) | |

## COASTAL COAL-WEST VIRGINIA, LLC'S MOTION REQUESTING RECONSIDERATION AND REHEARING *EN BANC*

For the reasons expressed in the Brief in Support of Motion for Reconsideration,

Coastal Coal-West Virginia, LLC requests that the entire Benefits Review Board consider

this matter sitting *en banc*, and that Coastal Coal be permitted to present oral argument on

the issues of law discussed in the Brief.

As per 20 C.F.R. § 802.305, Coastal Coal will explain how the ALJ failed to

consider the x-ray readers' comments under 20 C.F.R. §§ 718.202(a)(1) and 718.304(a)

1

Coastal Coal suggests this matter may be argued either in Charleston, West

Virginia, Pittsburgh, Pennsylvania, or Lexington, Kentucky, at a time and date of

the Board's convenience during the next several months.

Respectfully Submitted,

**COASTAL COAL-WEST VIRGINIA, LLC,**

By Counsel

William S. Mattingly
WV Bar No. 4699
Jeffrey R. Soukup
WV Bar No. 11872
JACKSON KELLY PLLC
150 Clay Street, Suite 500
P.O. Box 619
Morgantown, WV 26507
(304) 284-4100

3

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that **Coastal Coal-West Virginia, LLC's Motion Requesting Reconsideration and Rehearing *en banc*** was served upon the following, by mailing a copy thereof to each by United States Postal Service or by other indicated express delivery service, postage prepaid, this 21ST day of January, 2014.

**Overnight Delivery  
& Certified Mail:**

Thomas O. Shepherd, Jr.  
Benefits Review Board  
ATTN: Clerk of the Board  
Room S-5220  
200 Constitution Avenue, N.W.  
P.O. Box 37601  
Washington, DC 20210

**Regular Mail:**

Otis R. Mann, Esq.  
215 Hale Street  
Charleston, WV 25301 2207

Helen H. Cox, Associate Solicitor  
U.S. Department of Labor  
Office of the Solicitor  
200 Constitution Ave., N.W., Suite N-2117  
Washington, DC 20210

William S. Mattingly  
Jeffrey R. Soukup

cc:    Rhonda Livesay, HealthSmart Casualty Claims Solutions



# JACKSONKELLY
### ATTORNEYS AT LAW    PLLC

150 CLAY STREET • SUITE 500 • P.O. BOX 619 • MORGANTOWN, WEST VIRGINIA 26507 • TELEPHONE: 304-284-4100 • TELECOPIER: 304-284-4140
*www.jacksonkelly.com*

wmattingly@jacksonkelly.com
(304) 284-4110

January 21, 2014

**Via Overnight Delivery & Certified Mail:**
Thomas O. Shepherd, Jr.
Benefits Review Board
ATTN: Clerk of the Board
Room S-5220
200 Constitution Avenue, N.W.
P.O. Box 37601
Washington, DC  20210

Re: Federal Black Lung Claim
   <u>Richard L. Miller v. Coastal Coal-West Virginia, LLC</u>
   BRB No.: 2013-0213
   Case No.: 2011-BLA-6129
   OWCP No. XXX-XX-7181
   JK Ref. No.: 1762/532

Dear Mr. Shepherd:

Enclosed please find the original and two copies of **Coastal Coal-West Virginia, LLC's Brief in Support of Motion for Reconsideration and Rehearing** *en banc* for filing in the above-referenced federal black lung claim.

      Sincerely,

      William S. Mattingly

Enclosure
cc: Otis R. Mann, Jr., Esq.
  Helen H. Cox, Associate Solicitor
  Rhonda Livesay, HealthSmart Casualty Claims Solutions
M0924444.DOC/JRS:mw

Charleston, WV • Clarksburg, WV • Martinsburg, WV • Morgantown, WV • Wheeling, WV
Denver, CO • Evansville, IN • Indianapolis, IN • Lexington, KY • Pittsburgh, PA • Washington, DC

**UNITED STATES DEPARTMENT OF LABOR**
**BENEFITS REVIEW BOARD**

**WASHINGTON, DC**

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| COASTAL COAL-WEST VIRGINIA, LLC, | ) | |
| | ) | |
| | ) | BRB No.: 2013-0213 BLA |
| Petitioner, | ) | |
| | ) | Case No.: 2011-BLA-6129 |
| v. | ) | |
| | ) | |
| RICHARD LEE MILLER, | ) | |
| | ) | |
| Respondent, | ) | |
| and | ) | |
| | ) | |
| DIRECTOR, OFFICE OF WORKERS' | ) | |
| COMPENSATION PROGRAMS, | ) | |
| | ) | |
| Party-in-Interest. | ) | |

**COASTAL COAL WEST VIRGINIA, LLC'S**
**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION**
**AND REHEARING *EN BANC***

On December 23, 2013, a panel of the Benefits Review Board ("Board")

composed of Chief Administrative Appeals Judge Dolder and Administrative Appeals

Judges Hall and Boggs issued a split decision affirming the award of benefits issued by

Administrative Law Judge ("ALJ") Michael P. Lesniak. Coastal Coal-West Virginia,

LLC received the Board's decision on December 26, 2013. Coastal Coal moves to have

this decision reheard by the panel, or in the alternative, by the entire Board sitting *en*

*banc, see* 20 C.F.R. § 802.407, and requests, in a separate motion, oral argument, *see*
20 C.F.R. §§ 802.304–05.

 When a decision and order is issued by the Board, any aggrieved party may seek
reconsideration before the Board within 30 days from the filing of the decision.
20 C.F.R. § 802.407(a). The request must be in writing in the form of a motion, stating
the supporting rationale for the request, including the materials pertinent to the request.
*Id.* § 802.408. Such a motion shall state with particularity the grounds therefore and shall
set forth the relief or order sought. *Id.* § 802.219(a). Such a motion may also suggest the
appropriateness of reconsideration by the permanent members of the Board sitting *en
banc* and such suggestion must accompany the motion for reconsideration directed to the
panel which rendered the decision. *Id.* § 802.407. In accordance with this, Coastal Coal
has also filed a separate motion for reconsideration *en banc*.

 The Board majority affirmed the ALJ's award of benefits. The majority affirmed
the ALJ's finding the x-ray evidence established complicated pneumoconiosis (BRB
D&O at 7), that the ALJ considered the x-ray readers' comments at 20 C.F.R.
§ 718.202(a)(1) in weighing the x-ray evidence (*id.*), and that the ALJ properly found
these comments did not detract from the physicians' identification of Category-A large
opacities, as the comments only addressed the opacities' cause and not their existence
(*id.* at 8 (citing *Melnick v. Consolidation Coal Co.* 16 BLR 1-31, 1–33–34 (1991) (*en
banc*); *Cranor v. Peabody Coal Co.*, 22 BLR 1–1, 1–5 (1999))). The majority also held
the ALJ properly assessed the evidence's credibility in light of *Westmoreland Coal Co. v.*

*Cox*, 602 F.3d 276 (4th Cir. 2010), and properly explained the bases for his credibility

determinations in accordance with the Administrative Procedures Act ("APA") (*id.* at 8–

9), and affirmed the finding that Coastal Coal offered no contrary evidence to rebut the §

718.203(b) presumption that pneumoconiosis arose out of coal mine employment

(*id.* at 9).

Judge Boggs dissented, explaining remand was proper in light of the x-ray

readers' comments, "as the comments bring into question whether the disease process

seen on x-rays is reflective of complicated pneumoconiosis or of another disease

process." *Id.* at 10 (Boggs, J., dissenting). The ALJ erred in finding the x-ray evidence

established complicated pneumoconiosis, as he failed to consider the readers' comments

under § 718.202(a)(1). *See id.* at 11. Under *Melnick* and *Cranor*, comments which relate

to whether the disease diagnosed is pneumoconiosis or whether the pneumoconiosis

diagnosis is equivocal must be considered under § 718.202. *See id.* Conversely,

comments which do not undermine the credibility of the pneumoconiosis diagnosis but

instead relate to the pneumoconiosis's source are considered under § 718.203. *See id.*

The comments here fell into the former category. *See id.*

Judge Boggs further explained the ALJ compounded his error by refusing to

consider the x-ray readers' comments at the only other regulation they could be

considered under, § 718.203(b):

> In this case, citing *Cranor*, the administrative law judge did not consider
> the comments on the x-rays in Sections 718.202(a)(1) and 718.304(a).
> Then, in addressing 20 C.F.R. § 718.203, he found "[e]mployer has failed
> to offer any contrary evidence rebutting the presumption; therefore, the

> presumption stands." Furthermore, in a footnote, he stated "[t]o the extent that the x-ray comments are properly considered at this juncture, suggestions that [claimant's] x-rays showed lung cancer or an old granulomatous disease do not constitute contrary evidence, as these disease processes would not cause pneumoconiosis."

*Id.* (internal citations omitted). The ALJ's observation "was on the mark and underscores exactly why consideration of the comments is required at 20 C.F.R. §§ 718.202(a)(1) and 718.304(a)." *Id.* at n.15. "The effect of the administrative law judge's decision is that he did not consider the comments substantively at any point." *Id.* at 11. Because the ALJ used his x-ray findings to determine whether the medical opinions were credible, the ALJ's error in failing to consider the x-ray readers' comments permeated the rest of his opinion. *Id.* at 12.

Finally, Judge Boggs would have held the ALJ erred in: (1) failing to consider the comments from the needle biopsy report that "clinical exclusion of pneumoconiosis could be warranted"; and (2) failing to consider whether the CT-scan and PET-scan results suggest pneumoconiosis was less likely. *Id.* While the ALJ considered each § 718.304 category of evidence from the perspective of whether that particular category established complicated pneumoconiosis, the ALJ did not consider whether the medical evidence that did not establish complicated pneumoconiosis also undercut the credibility of the evidence to the contrary (and vice versa). *Id.*

Coastal Coal requests that the panel, or in the alternative, the Board sitting *en banc*, reconsider the December 23, 2013 decision and order on the following two grounds.

4

I.    **Since the x-ray readers' comments concerned whether Mr. Miller has
pneumoconiosis and whether the pneumoconiosis diagnoses were equivocal,
the comments needed to be considered under 20 C.F.R. §§ 718.202(a)(1) and
718.304(a). The ALJ failed to consider the comments substantively at any
point, meaning he did not consider "all relevant evidence," in violation of
30 U.S.C. § 923(b).**

    A.    **The ALJ's finding that the x-ray evidence establishes complicated
pneumoconiosis must be vacated because he failed to consider the x-ray
readers' comments under 20 C.F.R. §§ 718.202(a)(1) and 718.304(a).**

Coastal Coal requests the Board reconsider its decision to affirm the ALJ's finding

of complicated pneumoconiosis. Consistent with the reasoning contained in Judge

Boggs' dissenting opinion, the Board should vacate the ALJ's finding and should require

the ALJ on remand to substantively consider the x-ray readers' comments under 20

C.F.R. §§ 718.202(a)(1) and 718.304(a) before deciding whether the x-ray evidence

establishes the existence of complicated pneumoconiosis.

The issue is this case is whether Mr. Miller put forth sufficient evidence to

establish complicated pneumoconiosis. While the evidence is divided on whether Mr.

Miller has simple coal workers' pneumoconiosis, it overwhelmingly indicates he does not

have a totally disabling respiratory or pulmonary impairment. Mr. Miller can likely only

prevail in his claim for benefits by establishing complicated pneumoconiosis, thereby

invoking the irrebuttable presumption of total disability due to pneumoconiosis. 30

U.S.C. § 921(c)(3).

Mr. Miller submitted ILO x-ray interpretations finding Category A large opacities

consistent with pneumoconiosis. The physicians interpreting the x-rays included

comments indicating the need for additional information before a definitive diagnosis of

pneumoconiosis could be given and the need to consider other potential diagnoses for the

large opacity, such as lung cancer or granulomatous disease. DE 12; CE 3; CE 6. As

Coastal Coal explained and Judge Boggs agreed, these comments suggest a diagnosis

other than pneumoconiosis and/or render the x-ray interpreters' pneumoconiosis

diagnoses equivocal. *See* Petition for Review at 8–12; BRB D&O at 12 (Boggs, J.,

dissenting). Under the Board's holdings in *Melnick* and *Cranor*, the ALJ therefore

needed to consider these comments under 20 C.F.R. §§ 718.202(a)(1) and 718.304(a), in

his determination of whether the x-ray evidence established the existence of complicated

pneumoconiosis. *See id.*

The ALJ nevertheless found the x-ray evidence established complicated

pneumoconiosis without considering the effect of the x-ray readers' comments. ALJ

D&O at 14. Instead, the ALJ concluded the comments addressed the source or cause of

the diagnosed pneumoconiosis, not its existence, meaning they needed to be considered at

§ 718.203(b)—the rebuttable presumption that pneumoconiosis arose out of coal mine

employment—and not at § 718.202(a)(1):

> Employer argues that the opinions of Drs. Abrahams, Gaziano and
> Alexander are equivocal because they could not rule out other etiologies of
> miner's opacities. Thus, Employer urges me to discredit them. However,
> Employer overlooks the Board's position in *Cranor v. Peabody Coal Co.*
> In that case, the Board addressed the ALJ's treatment of an ILO form on
> which the position marked at 1/1 opacity but then commented "not CWP,
> etiology unknown." The Board found that such comments "merely
> address[ed] the source of the diagnosed pneumoconiosis" and must be
> addressed under 718.203, causation. Although the case at bar involves the
> diagnosis of complicated, not simple, pneumoconiosis, the same principle
> applies; because these physicians marked a large category A opacity

6

consistent with complicated CWP, their comments are not properly considered at this juncture.

*Id.* at 14 n.19. The Board majority affirmed the ALJ's analysis. BRB D&O at 8.

The ALJ and the Board majority misapply precedent in concluding the x-ray comments needed to be considered at § 718.203(b). As Judge Boggs explained, comments addressing the source of a pneumoconiosis diagnosed by x-ray are not relevant to the issue of the existence of pneumoconiosis at § 718.202(a)(1). *See id.* at 11 (Boggs, J., dissenting) (citing *Cranor*, 22 BLR at 1-5–1-6; *Melnick*, 16 BLR at 1-37). Rather, because such comments address the cause of the diagnosed pneumoconiosis, and not whether pneumoconiosis is present, they are relevant only under § 718.203(b). *See id.* Comments in Mr. Miller's x-ray readings do not go towards the causation of diagnosed pneumoconiosis. *See id.* at 12. Instead, by revealing the equivocality of the diagnoses, the comments cast doubt on the credibility or internal consistency of the x-ray complicated-pneumoconiosis diagnoses. *See id.* Such comments, unlike those directed at the etiology of a diagnosed pneumoconiosis opacity, are properly considered under § 718.202(a)(1). *See id.* Because the ALJ failed to consider the comments under §§ 718.202(a)(1) and 718.304(a), he did not take this evidence into account in finding the x-ray evidence established complicated pneumoconiosis. *See id.*

*Melnick* is indistinguishable from this case. There, in considering the x-ray evidence, the ALJ failed to address an additional notation the x-ray interpreter made on the ILO form. *Melnick*, 16 BLR at 1-37. The physician interpreted the x-ray as showing simple pneumoconiosis and Category A large opacities. *Id.* The physician also noted on

7

the ILO form, "can't rule out mesothelioma either side." *Id.* It was unclear whether this comment constituted an alternative diagnosis, thereby calling into question the complicated pneumoconiosis diagnosis, or whether it represented an additional cancer diagnosis. *Id.* The Board held the ALJ should have considered the comment together with the doctor's pneumoconiosis diagnosis under § 718.202(a)(1). *Id.* Because the record contained no evidence the ALJ considered Dr. Radebaugh's comment, the Board remanded for the ALJ to consider Dr. Radebaugh's entire x-ray report, including the additional comments, when evaluating the x-ray evidence under § 718.202(a)(1). *Id.* As *Melnick* is on all fours with this case, the same resolution is required here.

B.    **The ALJ's further refusal to consider the x-ray readers' comments under 20 C.F.R. §§ 718.203(b) means the comments were never considered substantively, violating the Act's requirement that "all relevant evidence" be considered.**

The ALJ compounded the failure to consider the x-ray comments under the appropriate regulations (20 C.F.R. §§ 718.202(a)(1) and 718.304(a)), by then refusing to consider the comments under the only other potentially applicable regulation—§ 718.203(b), the rebuttable presumption that pneumoconiosis arose out of coal mine employment. After the ALJ determined Mr. Miller had complicated pneumoconiosis and at least 10 years of qualifying coal mine employment, the ALJ applied the rebuttable presumption of § 718.203(b) to find the pneumoconiosis arose out of coal mine employment. ALJ D&O at 19. The ALJ found Coastal Coal did not offer contrary evidence to rebut the presumption. *Id.*

8

Notwithstanding the failure to consider the x-ray comments under § 718.202, the ALJ declared the comments effectively unreviewable even under § 718.203. "To the extent that the x-ray comments are properly considered at this juncture, suggestions that miner's x-ray showed lung cancer or an old granulomatous disease do not constitute contrary evidence, as these disease processes would not cause pneumoconiosis." *Id.* at 19 n.31. As Judge Boggs aptly noted, "[t]his observation by the administrative law judge was on the mark and underscores exactly why consideration of the comments is required at 20 C.F.R. § 718.202(a)(1) and 718.304(a)." BRB D&O at 11 n.15 (Boggs, J., dissenting).

The ALJ's finding is arbitrary and capricious, and constitutes a classic "Catch-22" no-win situation. With such a tortured construction of the evidence the ALJ deemed appropriate to consider under § 718.202(a)(1) or § 718.203, the ALJ effectively foreclosed any consideration whatsoever of the x-ray comments. Either the comments go towards the credibility of the pneumoconiosis diagnosis, to be considered under § 718.202, or the comments go towards the etiology of the diagnosed pneumoconiosis, to be considered under § 718.203. The ALJ's answer—the comments are not properly considered under either regulation—means the comments are never considered at all. Judge Boggs recognized this defect, agreeing "The effect of the administrative law judge's decision was that he did not consider the comments substantively at any point." *Id.* at 11. This violates the BLBA's command that "all relevant evidence" be considered in determining a claim. 30 U.S.C. § 923(b); *see also Dixie Fuel Co. v. Director, OWCP,*

9

700 F.3d 878, 880 (6th Cir. 2012) ("The Black Lung Benefits Act commands judges to consider '*all* relevant evidence' in determining the validity of a given claim."); *Elm Grove Coal Co. v. Director, OWCP*, 480 F.3d 278, 282 (4th Cir. 2007) (same).

The explanatory comments as to what the readers believed the x-ray changes may have shown are highly relevant evidence, as they question, if not completely undermine, the credibility of a pneumoconiosis diagnosis and make the contrary conclusions of Coastal Coal's experts comparatively more persuasive. The ALJ must consider such relevant evidence under §§ 718.202(a)(1) and 718.304(a) in making his initial determination about whether the x-ray evidence supported finding pneumoconiosis. His failure to do so results in a finding of complicated pneumoconiosis under § 718.202(a)(1) that is not supported by substantial evidence, accompanied by a presumption of coal-dust causation under § 718.203(b) that is effectively irrebuttable.

The Board majority nonetheless affirmed the ALJ's analysis under § 718.203(b):

> Because Employer must affirmatively establish that the source of Claimant's pneumoconiosis was not coal employment, it was within a reasonable exercise of the Administrative Law Judge's discretion to find that the comments, which suggested that other conditions, e.g., a tumor, lung cancer, or a granulomatous disease should be ruled out, and not sufficient to *affirmatively* rebut the presumption that Claimant's pneumoconiosis arose out of coal mine employment.

BRB D&O at 9.

By so ruling, the majority overlooks the illogical and contradictory reasoning the ALJ employs in finding Coastal Coal could not rebut the § 718.203(b) disease-causation presumption. The ALJ concluded the x-ray readers' comments are not contrary evidence

10

with which to rebut the § 718.203(b) presumption only because the different disease processes suggested by the comments (lung cancer or granulomatous disease) would not cause pneumoconiosis. *See* ALJ D&O at 19 n.31. In other words, the comments do not go towards the etiology of a diagnosed pneumoconiosis, they go towards whether the disease identified on x-ray is pneumoconiosis in the first place. But this finding directly contradicts the ALJ's earlier finding under § 718.202(a)(1) that the readers' comments, like those in *Cranor*, address the source of a diagnosed pneumoconiosis and must be considered under § 718.203(b). *See id.* at 14 n.19. In short, the ALJ concludes comments cannot be considered under § 718.202 because they must be considered under § 718.203, and they cannot be considered under § 718.203 because they must be considered under § 718.202. A logical paradox cannot provide a reasoned basis for awarding benefits.

The finding that the x-ray evidence establishes complicated pneumoconiosis should be vacated and remanded for the ALJ to consider the x-ray readers' comments under §§ 718.202(a)(1) and 718.304(a). As the ALJ relied on the erroneous findings under §§ 718.202(a)(1) and 718.304(a) to determine the credibility of the physicians' opinions, "the error permeated the rest of his opinion." BRB D&O at 12 (Boggs, J., dissenting). The Board should also vacate the ALJ's findings regarding the physicians' opinions under § 718.304(b) and vacate for further consideration.

11

II.    **The ALJ failed to weigh the biopsy, CT-scan, and PET-scan evidence against the x-ray evidence. In failing to do so, the ALJ failed to weigh all relevant evidence and consider whether the biopsy, CT-scan, and PET-scan evidence suggest a diagnosis of pneumoconiosis is less likely.**

The majority errs in not holding the ALJ to the task of weighing all the relevant medical evidence together and making factual findings based on a comparative review of all the evidence. As Judge Boggs explained, the ALJ separately considered each § 718.304 category of evidence from the perspective of whether that particular category established complicated pneumoconiosis; "however, when considering all of the relevant evidence, like and unlike, the question is whether the medical evidence that did not establish complicated pneumoconiosis also undercut the credibility of the evidence to the contrary (and vice versa)." BRB D&O at 12 (Boggs, J., dissenting). All relevant evidence must be weighed together to determine the existence of pneumoconiosis. *See Dixie Fuel Co.*, 700 F.3d at 880; *Cox*, 602 F.3d at 283; *Elm Grove Coal Co.*, 480 F.3d at 282; *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 211 (4th Cir. 2000); *Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22, 25 (3d Cir. 1997).

This agency record contained biopsy, CT-scan, and PET-scan evidence—all evidence potentially relevant to whether Mr. Miller has pneumoconiosis. The biopsy evidence revealed "predominately pigment-laden macrophages and reactive fibrosis tissue." DE 13. While the tissue was "considered marginal for review in the absence of a definitive pulmonary parenchyma or bronchial epithelial cells," the hospital pathologist determined "clinical exclusion of pneumoconiosis could be warranted." *Id.* But, the pathologist found no large opacity or massive legion and therefore did not diagnose

complicated pneumoconiosis. The ALJ found the biopsy evidence did not support

finding complicated pneumoconiosis, and found it inconclusive for simple coal workers'

pneumoconiosis. ALJ D&O at 14–15, 15 n.20. The CT-scan and PET-scan evidence

revealed only a right upper lobe mass and calcifications related to granulomatous disease

versus tumor. DE 13 at 2, 17, 32. The ALJ found the CT-scan and PET-scan evidence

did not support finding complicated or simple pneumoconiosis. ALJ D&O at 16, 16 n.25.

The ALJ appears to agree the biopsy, CT-scan, and PET-scan evidence all fail to

establish pneumoconiosis. Yet, as the ALJ mechanically considered the § 718.304

evidence categories in isolation in finding complicated pneumoconiosis, and failed to

weigh the categories together, he failed to consider whether the other evidence[1], here

biopsy, CT-scan, and PET-scan evidence, made finding complicated pneumoconiosis

based on the x-ray evidence less reasonable. In view of the relevant nature of biopsy,

CT-scan, and PET-scan evidence, the ALJ may well have reconsidered his finding.

Pathology evidence, such as biopsy or autopsy evidence, "is the most reliable evidence of

the existence and degree of pneumoconiosis." *Melnick*, 16 BLR at 1-33. CT scans are

considered superior to x-rays in accurately depicting pneumoconiosis in lung tissue. *See,*

*e.g. Thornberry v. Island Creek Coal Co.*, BRB No. 11-0350 BLA, at 6 (Feb. 28, 2012)

---

[1] § 718.304(c) mandates the consideration of other medical evidence and § 718.304(b),
mandates consideration of biopsy evidence.

(unpub.); *Herndon v. CK Coal Corp.*, BRB No. 09-0419 BLA, at 3 (Feb. 22, 2010) (unpub.); *see also* EE 2 at 30–31 (a CT scan "is much more sensitive in looking at abnormalities in the lungs than a routine chest radiograph."). Here, biopsy, CT-scan, and PET-scan evidence all failed to support either a finding either simple or complicated pneumoconiosis, and the biopsy prosector even commented that "clinical exclusion of pneumoconiosis could be warranted." While required in every case, the need to weigh the biopsy, CT-scan, and PET-scan evidence against the x-ray evidence is particularly apt here, given the uncertain nature of the x-ray interpretations and the x-ray interpreters' requests to consider more information (such as biopsy and CT scans) in order to reach conclusive diagnoses. Whatever the x-ray evidence may tend to show when considered in isolation, when it is weighed together with the biopsy, CT-scan, and PET-scan evidence, any x-ray findings of pneumoconiosis become much less persuasive.

The Fourth Circuit, whose law governs this claim, explained:

> The statute governing the evidence required to establish a claim for black lung benefits states that "[i]n determining the validity of claims . . . all relevant evidence shall be considered." 30 U.S.C.A. § 923(b). The plain meaning of this statutory language is that all relevant evidence is to be considered together rather than merely within discrete subsections of § 718.202(a).

*Compton*, 211 F.3d at 208; *see also Williams*, 114 F.3d at 25 (criticizing the Board for relying solely on x-ray evidence and failing to consider biopsy evidence). The Director agrees with this interpretation. "This reading respects the Director's own interpretation of the regulation. According to the Director, 'although section 718.202(a) enumerates four distinct methods of establishing pneumoconiosis, all types of relevant evidence *must be*

14

*weighed together* to determine whether the claimant suffers from the disease.'" *Dixie Fuel Co.*, 700 F.3d at 881.

Nothing indicates the ALJ weighed the biopsy, CT-scan, and PET-scan evidence against, or together with, the x-ray evidence. In his weighing analysis, the ALJ only mentioned the biopsy, CT-scan, and PET-scan evidence to say whether it revealed lung cancer. *See* ALJ D&O at 18. ("Additionally . . . the radiologists doing the CT reports and the chest x-rays seriously considered whether or not the large masses . . . represented malignancy. The needle biopsy was negative for malignancy and even though Dr. Maxwell urged a resection, there is no indication in the record that miner developed cancer after that time.") (internal quotation marks omitted). Moreover, as Judge Boggs noted, the ALJ's weighing of the biopsy evidence was further erroneous because he failed to consider the prosector's comments that "clinical exclusion of pneumoconiosis could be warranted." BRB D&O at 12 (Boggs, J., dissenting). The ALJ's failure to weigh the highly accurate biopsy, CT-scan, and PET-scan evidence against the less accurate x-ray evidence renders his finding of complicated pneumoconiosis unreasoned and invalid.

For these further reasons, the Board should vacate the ALJ's finding of complicated pneumoconiosis and remand for the ALJ to weigh all the relevant evidence together.

15

## CONCLUSION

Coastal Coal-West Virginia, LLC requests that the Benefits Review Board panel, or alternatively, the entire Board *en banc*, reconsider the Decision and Order issued on December 23, 2013. The ALJ's decision and order awarding benefits is irrational, is not supported by substantial evidence, and is contrary to law. The Board should reconsider its findings on these arguments and then vacate the ALJ's award of benefits and remand for further proceedings.

Respectfully Submitted,

**COASTAL COAL-WEST VIRGINIA, LLC,**

By Counsel.

William S. Mattingly
WV Bar No. 4699
Jeffrey R. Soukup
WV Bar No. 11872
JACKSON KELLY PLLC
150 Clay Street, Suite 500
P.O. Box 619
Morgantown, WV 26507
(304) 284-4100

16

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that he served **Coastal Coal-West Virginia LLC's Brief in Support of its Motion for Reconsideration and Rehearing** *en banc* upon the following, by mailing a copy thereof to each by United States Postal Service or by other indicated express delivery service, postage prepaid, this 21ST \_\_\_\_\_ day of January, 2014.

**Overnight delivery**  
**& Certified Mail:**

Thomas O. Shepherd, Jr.  
Benefits Review Board  
ATTN: Clerk of the Board  
Room S-5220  
200 Constitution Avenue, N.W.  
P.O. Box 37601  
Washington, DC  20210

**Regular Mail:**

Otis R. Mann, Esq.  
215 Hale Street  
Charleston, WV  25301 2207

Helen H. Cox, Associate Solicitor  
U.S. Department of Labor  
Office of the Solicitor  
200 Constitution Ave., N.W., Suite N-2117  
Washington, DC 20210

William S. Mattingly  
Jeffrey R. Soukup

cc:    Rhonda Livesay, HealthSmart Casualty Claims Solutions

From: (304) 284-4100
Megan Williams
Origin ID: MGWA



150 Clay Street
Morgantown, WV 26501

Ship Date: 21JAN14
ActWgt: 1.0 LB
CAD: 104588260/INET3490

Delivery Address Bar Code

J1410131227032B

SHIP TO: (304) 284-4100          BILL SENDER
**Thomas O. Shepherd, Jr.**
**Benefits Review Board**
**200 Constitution Ave, N.W.**
**Room S-5220**
**WASHINGTON, DC 20210**

Ref #        1762/532
Invoice #
PO #
Dept #

WED - 22 JAN AA
STANDARD OVERNIGHT

TRK# 7976 8489 9991
0201

**XC TSGA**

20210
DC-US
IAD



522G1/D6EC/F220

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.